## PENNINGTON *et al. vs.* GAMMON *et al.*

1. Any county may organize a chain-gang to be composed of convicts, who may be employed in working on the roads, streets, or other public works.

2. The power to make provision for their safe keeping and for their constant and diligent employment was vested originally in the ordinaries, and is now vested in some counties in county commissioners.

3. Such powers include the right to use those means and incur those expenses which may be reasonably necessary for their execution, not exceeding the constitutional limit. Hence county commissioners may incur a debt (when too late to levy a tax) for the purchase of necessary tools or implements, not exceeding the limit set by the constitution.

Injunction. County Matters. Tax. Commissioners. Before Judge UNDERWOOD. Floyd County. At Chambers. November 30th, 1881.

Reported in the decision.

D. B. HAMILTON, by brief, for plaintiffs in error.

J. BRANHAM, for defendants.

CRAWFORD, Justice.

The commissioners of road and revenues for the county of Floyd having organized a chain-gang for said county under the act of 1879, and having levied a tax for their maintenance and support of 18⅛ per cent. on the state tax, which sum when raised will be insufficient, in their judgment, for all the purposes incident to and necessarily connected therewith, did, on the 19th day of November, 1881, pass the following order: "The board, under the repeated recommendations of the grand juries of this county, having organized a chain-gang under the laws of this state, and having now twenty-four prisoners in said chain-gang, which will likely be added to from time to time, and the tax levied for this purpose being insufficient for the maintenance and support of the chain-gang, and it being necessary to raise an additional sum, to-wit, $4,000.00 for this purpose, and it being too late in the year to levy another tax, it is ordered that the chairman of the board negotiate a temporary loan or loans to supply this casual deficiency of revenue, and that the sum so raised be applied as follows: $1,500.00 to the purchase of a rock-crusher and engine, to be used by said chain-gang in crushing stone to macadamize the roads at points where such work is or may be needed, and the balance to purchase supplies, clothing and tools, and for the pay of overseers and guards, and the general maintenance of the chain-gang."

To this order the complainants in this bill object, and to the end that the same may not be enforced, ask an injunction restraining them from negotiating said loan, upon the ground that they have no power or authority to incur any such debt, and especially so, as to the purchase of the rock-crusher and steam-engine.

The defendants claim that they have the power under the constitution and laws to borrow the money to supply this casual deficiency of the revenues, and that it is now

too late to levy and collect the same for the present year. The whole question then, made by this bill and answer is, whether the power claimed is granted to the defendants.

Under various acts of the general assembly of this state, the last of which was passed in the year 1879, any county may organize a chain-gang to be composed of convicts, who may be employed in working the roads, streets, or on other public works. The power to make provision for their support, safe-keeping, and *for their constant and diligent employment*, was vested originally in the ordinaries of the counties, but now in the commissioners of roads and revenues wherever they have been provided for : Code, §§4814, 4815 ; acts, 1874, p. 24 ; acts, 1878-9, p. 167.

By virtue therefore of the duty imposed, a correlative right exists, even if not specially empowered, in these commissioners, not only to levy taxes for the support of these convicts, but to provide the means for their doing the work specified, and *for their constant and ·diligent employment* therein. It is under this power that they have already levied 18⅓ per cent. on the taxable property of the county. This not being sufficient in the judgment of the commissioners, they propose to make a temporary loan to supply the deficiency. To prevent this indebtedness being incurred, this application for injunction is made, and it is insisted that the constitution of 1877 prohibits the incurring any new debt in this way. By art. vii, sec. vi, par. 11, any county, under an act of the legislature, may levy taxes among other things, to maintain and support prisoners, and for the public roads. Under the power here granted, there can be no question of the right to levy the tax of 18⅓ per cent. which has already been levied, and to which no objection·has been urged. Furthermore, whenever there is a casual deficiency of the revenues, then the county is authorized to incur a new debt for a temporary loan to meet that deficiency, provided that the said amount shall not exceed one-fifth of one per cent. of the assessed value of the taxable property therein—art.

Pennington *et al. vs.* Gammon *et al.*

vii, sec. vii, par. 1. It is not pretended that the amount to be borrowed exceeds the constitutional limit. But it is insisted that $1,500.00 of this money is to be used in the purchase of a rock-crusher and engine, and that no law has been passed authorizing such an increase of debt, and that no election has been held for that purpose. It is true that no law has been passed authorizing the commissioners to purchase the specific articles named, but there is a law authorizing the employment of the chain-gang on the public roads; and the right to provide the necessary implements with which to do the work must of necessity follow. There is no law authorizing the purchase of spades, shovels, hoes, axes or anything else needed; yet it would hardly be insisted that the right to purchase them did not exist. And if the commissioners should consider that the best and most economical method of working the public roads, was to macadamize them, no legal reason has been given to us why they might not purchase such implements as would be needed and employ the chain-gang in that way. We cannot see that *the cost* of the article to be purchased, can affect the right to buy, so long as it does not exceed the limit of the amount they may have the power to levy, or the amount they are authorized to borrow to supply deficiencies in the revenues, and in this limitation lies the protection to the tax-payer.

Nor is this ruling in conflict with the case of *Spann et al. vs. The Board of Commissioners of Webster county*, decided at the February term, 1880, not yet reported. In that case the commissioners of Webster county levied a tax of 22 per cent. for the purchase of iron safes when there was no law, subsequent to the adoption of the constitution of 1877, authorizing such a levy of taxes. It was, therefore, the creation of a new debt on the property of the county for which no authority had been given by the general assembly of the state, nor did it fall within any of the enumerated objects of taxation set forth in the constitution which would authorize it, without the assent of two-

v 67—30

thirds of the qualified voters of the county. Whereas, in the present case—under the constitution—the counties are specifically authorized to levy a tax to maintain and support prisoners, and for the working of the public roads. Under this specific grant the taxes have been levied, and there being a casual deficiency, under another specific grant, they are proceeding to make a temporary loan less than one-fifth of one per cent. upon the assessed value of the property of the county.

Judgment affirmed.