24529. NELSON *v.* THE STATE.

DECIDED MAY 3, 1935.

W. A. McClellan, W. A. McClellan Jr., Emile Hirsch, for plaintiff in error.

E. W. Butler, solicitor, John Y. Roberts, solicitor, contra.

208

MacIntyre, J. This case was on November 16th, 1934, transferred by the Supreme Court to the Court of Appeals for the following reason: "The defendant was convicted of a misdemeanor, in the city court of Macon. Upon the trial she invoked a ruling by the court as to the constitutionality of the act of 1918 (Ga. Laws 1918, p. 262), and the judge held the act constitutional. The defendant thereafter sought to raise the same question in one of the grounds of her motion for a new trial, but took no exception, in the motion or otherwise, to the ruling previously made upon the trial. *Held,* that the previous ruling, not having been made the subject of any timely or proper exception, became the law of the case and eliminated the constitutional question; and the case not being one which would otherwise fall within the jurisdiction of the Supreme Court, it must be transferred to the Court of Appeals. *U. S. Fidelity & Guaranty Co.* v. *Koehler,* 161 *Ga.* 934 (132 S. E. 64) ; *Coats* v. *Casey,* 162 *Ga.* 236 (133 S. E. 237) ; *Brightwell* v. *Oglethorpe Telephone Co.,* 176 *Ga.* 65 (166 S. E. 646)."

The defendant, Ezetter Nelson, was tried under a separate accusation which alleged a violation of the act of 1918 (Ga. Laws 1918, p. 262; Code of 1933, §§ 67-9902, 9905), which reads as follows: "A mortgage [mortgagor], giver of purchase-money lien, lien for rent, or any lien created by contract between the parties, or the holder or possessor of any said property under mortgage or liens above referred to, who shall run off, remove, hide or in any way dispose of said property under mortgage or lien, so as to hinder, delay or prevent the levying officer of the county of defendant's bona fide residence from levying on any property covered by mortgage or lien by virtue of the foreclosure of said mortgage or lien, shall be guilty of a misdemeanor. . . When search shall have been made in any of said cases by the levying officer for the purpose of levying said execution, and the property described therein is not found at defendant's home, and if defendant shall fail or refuse to direct said levying officer to said property, said officer shall enter a nulla bona; and the testimony of the officer or the entry of nulla bona, when properly proven, shall shift the burden of proof to defendant." The defendant was convicted, and excepted to the overruling of her motion for a new trial.

Movant contends that the retention-of-title contract attached to the accusation was dated September 19, 1933, and said accusation

alleged that the crime was committed on September 19, 1933, while the nulla bona was entered by the sheriff of the municipal court of Macon, Bibb County, Ga., on December 18, 1933, which movant contends constituted a fatal variance, and he cites the case of *Werner* v. *State,* 51 *Ga.* 426. The *Werner* case is differentiated from the case here in that there the time was of the essence of the offense, the charge being the keeping open a tippling house on the 4th day of April, 1873, being Sunday. The 4th day of April, 1873, did not fall on Sunday, but fell on Friday. It was not a violation of the statute to keep the tippling house open on any day other than Sunday, so, in a case like the *Werner* case, time being of the essence of the offense, it must be correctly alleged and proved. In the instant case, the gist of the crime was the running; removing, concealing, or hiding, or in some way disposing, of the property under mortgage or lien, so as to hide, delay, or prevent the levying officer from levying on the property covered by the mortgage or lien by virtue of the foreclosure of the same. The indictment alleged the commission of the crime on the 19th day of September, 1933. The retention-of-title contract, attached to the accusation, happened to be dated September 19, 1933. The nulla bona was entered December 18, 1933. The accusation was filed December 23, 1933. The general rule is that "though a day and a year must be alleged in every indictment, time is not material, and that a different day from the one laid may be proved, provided it be within the period prescribed by the statute of limitations." *Werner* v. *State,* supra. The verdict was not contrary to law and without evidence to support it merely because the crime was alleged to have been committed upon the date of the execution of the retention-of-title contract, when the proof shows that the offense was committed at a subsequent date prior to the filing of the accusation and within the period of the statute of limitations. This does not constitute a fatal variance. *Robinson* v. *State,* 27 *Ga. App.* 770 (109 S. E. 922); *Clarke* v. *State,* 90 *Ga.* 448 (16 S. E. 96); *Adkins* v. *State,* 103 *Ga.* 5 (49 S. E. 432).

The State having proved the retention-of-title contract alleged, as to date and otherwise, there is no variance as to date between the written instrument proved and the written instrument pleaded. The act in the instant case was a crime, no matter what the date was on which it was committed, if it was within the statute of

limitations; and when the act was proven to be within the period of the statute of limitations, there was not a fatal variance, under the facts of this case.

The evidence was in part that the defendant, Ezetter Nelson, the mother, and her three daughters, Mabel Mitchell, Lois Hall, and Annie Nelson, lived together at 234 Orange street. On August 30th, 1933, Mabel Mitchell and Lois Hall went together to the Empire Furniture Company in Macon, Georgia, and Mabel Mitchell purchased some personal property from the company, paying down a small first payment and giving a retention-of-title contract to secure the balance of the purchase-money; she ordered the property delivered to a vacant house at 203 Woods Alley (which was a fictitious address) ; on August 30, the afternoon of the delivery of the property, Mabel Mitchell and Lois Hall and the defendant, Ezetter Nelson, borrowed a hatchet and nailed up the windows and doors of the vacant house on Woods Alley, and left; the next morning, the same three persons and a white man in a truck drove up to this house, loaded this property on the truck, and carried it away. This vacant house had not been rented to any one for a month prior to and a month subsequent to August 30, 1933, the date on which the defendant and her two daughters were using it. On September 12, 1933, Annie Nelson, the third daughter, who lived at the same house with her mother, Ezetter Nelson, and the two daughters above mentioned purchased from Johnson Brothers, who conducted a furniture store, a bill of furniture, paid a small amount down, and disposed of the same. On September 19, 1933, Ezetter Nelson, the mother, bought personal property from Johnson Brothers' furniture store, made a small payment, and gave a retention-of-title contract for the balance of the purchase-money; ten days later one of the representatives of Johnson Brothers went to the home of the defendant at 234 Orange street and there found that the house was open and vacant, and, upon a search, found no property in the house, and after this time neither the mother nor any of the three daughters could be found until a warrant was issued and they were finally arrested, nor could any of the property above referred to be found.

The first question to be determined is: Was there sufficient evidence to authorize the jury to find, on the whole case, that a conspiracy existed between the mother and the three daughters. The

fact that these parties were separately indicted makes no difference as to the admissibility of the acts of a conspirator against the defendant; "the principle upon which the acts are admissible at all being that the act or declaration of one is the act or declaration of all united in one common design, a principle which is wholly unaffected by the consideration of their being jointly indicted." *Slaughter* v. *State,* 113 *Ga.* 284 (38 S. E. 854, 84 Am. St. R. 242). In the case of *Coleman* v. *State,* 141 *Ga.* 731, 733, the court said: "If sufficient prima facie evidence of a conspiracy is introduced to authorize the admitting of evidence of acts and declarations of one of the alleged conspirators, ultimately it is for the jury to determine whether, from the whole evidence, a conspiracy has been shown; and if they find that none has been established, it is then their duty not to consider the acts and declarations of the supposed coconspirator which has been admitted, except so far as they may affect him, if he is on trial. 3 Enc. Ev. 428. As to the admissibility of the evidence, if a prima facie case of conspiracy is shown, it does not matter whether the supposed conspirator whose acts or declarations are proved is on trial or not. *Slaughter* v. *State,* 113 *Ga.* 284, 288 (38 S. E. 854, 84 Am. St. R. 242). A conspiracy may be shown by circumstantial evidence as well as by that which is direct. *Weaver* v. *State,* 135 *Ga.* 317 (69 S. E. 488); *Walker* v. *State,* 136 *Ga.* 126 (70 S. E. 1016); *Turner* v. *State,* 138 *Ga.* 808, 812 (76 S. E. 349)."

We think the evidence as a whole authorized the jury to find that there was a conspiracy between the mother and the three daughters to defraud the Empire Furniture Company and Johnson Brothers, in that they did "run, remove, hide, and conceal said property," contrary to the statute. Fraud is generally a matter of secrecy; it is only by collecting together numerous circumstances ofttimes that it can be brought to light and exposed. *Farmer* v. *State,* 100 *Ga.* 41 (28 S. E. 26). "A conspiracy may be inferred from circumstances. While it can also be established by direct proof, it can not generally be proved except by circumstantial evidence. It is seldom that any one act, taken by itself, can be seen as tending to prove a conspiracy, but when taken in connection with other acts, its tendency to prove the fact may be more clearly discerned. We may be satisfied from circumstances attending a series of criminal acts, that they result from concerted and asso-

ciated action, although if each circumstance was considered separately, it might not show confederation; but where linked together, circumstances that in themselves are inconclusive, yet taken as a whole, may show that apparently isolated acts spring from a common object and have in view the promotion of a common purpose." 2 Wharton's Criminal Evidence (10th ed.), § 888. It should be further borne in mind that "conspiracy differs from all other offenses, in that, to establish it, the evidence must show it to be the act of more than one person. Conspiracy, therefore, affords a signal illustration of the exception to the fundamental rule as to evidence of collateral offenses. While the acts of each conspirator emanate from him individually, they are part of a common purpose or design, so that evidence of such acts is relevant, although each component act may constitute an independent offense. The reason for the rule in this and similar cases is that, when system is once proved, each particular part of the system may be explained by the other parts, which go to make up the whole." 1 Wharton's Crim. Ev. (10th ed.), p. 150 (footnote). The indictment and conviction against the two daughters, Mabel Mitchell and Lois Hall, were admissible as evidence (1 Wharton's Crim. Ev., p. 195, § 48) as tending to show that they each performed different acts, and that these acts were connected as a part of the general scheme by defendant and her three daughters to defraud the two furniture companies, the conspiracy being to defraud both of the furniture companies, to wit: The Empire Furniture Company and Johnson Brothers, the defrauding of Johnson Brothers was a component part of the whole conspiracy and the acts done by the coconspirators were in pursuance of a concerted plan with reference to the crime charged. *Fairfield* v. *State,* 155 *Ga.* 660, 663 (118 S. E. 395); Commonwealth v. Riches, 219 Mass. 433 (107 N. E. 371); Tarbox v. State, 38 Ohio St. 581; Hudson v. State, 43 Tex. Crim. 420 (4) (66 S. W. 668).

The acts of the third daughter, Annie Nelson, were admissible for the same reason, for where the intent is material, other acts of the same character, about the same time, tending to show a common purpose and design to defraud, although such acts were committed by a coconspirator, are admissible. State v. Flood, 148 Iowa, 146 (127 N. W. 48); Howie v. State, 15 Ala. App. 185 (72 So. 759).

Letters written by one of the coconspirators during the existence

of the conspiracy, which tended to show acts done in pursuance of the conspiracy, were admissible.

The overruling of the motion for a new trial was not erroneous for any of the reasons urged.

*Judgment affirmed. Broyles, C. J., and Guerry, J., concur.*